1:26-cv-502-SEB-MG

FILED
03/16/2026
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

# PARTICULARS OF CHARGE OF DISCRIMINATION AND RETALIATION

The Charging Party, Ashley Donovan, is a female former employee of the Respondent, the Southwestern Consolidated School Corporation ("Southwestern"). Most recently, Ms. Donovan worked as a guidance counselor for Southwestern.

Ms. Donovan is subject to the protections of several federal civil rights laws, including but not limited to the Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Ms. Donovan also suffers from the disabilities of depression and anxiety and was regarded as having a disability by Southwestern for which she needed but was not provided with reasonable accommodation. Therefore, Ms. Donovan is also entitled to the protections afforded to her by the Americans with Disabilities Act ("ADA"). On May 23, 2025, Southwestern discriminated against Ms. Donovan when Southwestern unlawfully terminated her employment with it in violation of her rights under Title VII and the ADA. Southwestern is an "employer" as that term is used in both federal civil rights statutes.

Ms. Donovan originally worked for Southwestern as a teacher from 2008-2012. In 2012, Ms. Donovan resigned her position with Southwestern to be a stay-at-home mother, a position which she enjoyed until 2020. In August 2020, Ms. Donovan was rehired as a teacher by Southwestern. Ms. Donovan worked as a teacher for Southwestern from August 2020 until May 2024. During this four-year period, Ms. Donovan received reviews of "highly effective" in her performance reviews, the last of which occurred in October 2022.

In the Spring of 2023, Ms. Donovan discovered her passion to be a school guidance counselor. In April 2023, Ms. Beth Hoeing (who is female and who is Southwestern's elementary school principal) and Mr. Joshua Edwards (who is male and who was Southwestern's superintendent at the time) promised to reimburse Ms. Donovan for her tuition if Ms. Donovan

agreed to obtain a master's degree in furtherance of becoming a guidance counselor at Southwestern. **See Exhibit 1.**

However, in August 2024, Southwestern hired Mr. Jaime Wilkinson (who is male) to be its superintendent. He had never previously held the title or been in the position of superintendent at Southwestern or any other school corporation. Subsequent to his hiring, Mr. Wilkinson informed Ms. Donovan that, despite the oral and written assurances from Southwestern that the Corporation would reimburse her for her tuition expenses associated with obtaining her master's degree in school counseling, Southwestern deemed the courses that she was taking as not being "valid," and therefore, Southwestern would not be reimbursing her for approximately $30,000.00 in tuition expenses – expenses she would not have incurred but for the promise of Respondent to reimburse her for the same. Subsequent to Mr. Wilkinson communicating the decision not to reimburse Ms. Donovan for approximately $30,000 in tuition, Ms. Donovan's disabilities and the symptoms related thereto worsened. She did not know how she was going to pay for the $30,000 in tuition that she had incurred on reliance upon Southwestern's promise to reimburse her for the same. Upon information and belief, Mr. Wilkinson, on Southwestern's behalf, made this decision to breach its reimbursement agreement with Ms. Donovan because she is female and because she is disabled as that term is used in the ADA.[1]

Furthermore, the fact that Southwestern terminated Ms. Donovan based upon her gender

---

[1] Although she understands that such a claim is not within the EEOC's purview, Ms. Donovan is placing Southwestern on notice that, if she is forced to file a lawsuit in a court of competent jurisdiction in order to preserve her rights, she will assert all legal claims against Southwestern that are supported by the relevant facts and the applicable law, including but not necessarily limited to asserting a breach of contract claim against Southwestern in violation of her rights under Indiana law.

and her disability is established by Southwestern's disparate treatment of her. On February 10, 2025, Ms. Donovan, unfortunately, overslept and did not timely report to work. Ms. Donovan overslept, in large part, due to her disability. Rather than having a staff member telephone or perform a wellness check on her, Ms. Hoeing reported Ms. Donovan's absence to the local police department, and the police department sent a police officer to Ms. Donovan's home. Southwestern reprimanded Ms. Donovan as a result of this incident.

Upon information and belief, Southwestern did not send a police officer to male and/or non-disabled employees' homes when those employees failed to report to work and had failed to report his or her absence to Southwestern. For example, a fourth grade teacher at Southwestern had approximately fifty (50) absences from work during the 2023-2024 school year. Nevertheless, Southwestern never reprimanded or otherwise disciplined this teacher. Upon information and belief, this employee is not disabled as that term is used in the ADA and/or she did not suffer from the same disabilities as Ms. Donovan.

During this same period of time, Ms. Donovan's electronic devices had been hacked and were not working properly. Ms. Donovan notified Southwestern's leadership and IT department. She was required to use the secretary's computer in the office because hers was not usable. She filled out and submitted multiple "tickets" describing the problems with her electronic devices, she sent emails, made phone calls and begged the technology director to address her concerns and to repair her hardware and/or her software. As a guidance counselor without access and use of the technology and the related devices and equipment at Southwestern it was impossible to properly and promptly perform all of her duties. Upon information and belief Southwestern never failed or refused to remedy technology, software and/or hardware issues for any other employee.

Furthermore, on March 11, 2025, Southwestern, again, sent a police officer to Ms. Donovan's home when she did not timely report to work. However, Ms. Donovan did report to work on that date, and more importantly, Ms. Donovan possessed a note from her physician that excused her absence from work on March 10 and 11, 2025. Ms. Donovan had provided this documentation to Southwestern, and therefore Southwestern was aware of her condition and her need for accommodation. Nevertheless, Southwestern did not offer reasonable accommodations to Ms. Donovan for her disability, nor did Southwestern engage in the interactive process as required by the ADA. Rather, it elected to inappropriately question her 12 year old daughters, who attended the school where Ms. Donovan taught, as to Ms. Donovan's whereabouts and/or condition, in order to further discriminate against and humiliate Ms. Donovan.

Finally, on May 23, 2025, Ms. Donovan reported late to work due to her disability. This time, Southwestern fired Ms. Donovan. Southwestern terminated Ms. Donovan for failing to report to work even though she had the fewest number of absences in Southwestern's administration. Most notably, Ms. Angela Stegner (at least three times) and Ms. Brittany Butterfield had repeated incidents of failure to show up for work and/or failure to report their absences prior to work, but Southwestern did not reprimand, discipline, or terminate these employees as it did Ms. Donovan. Prior to 2025, Ms. Donovan did not have any attendance issues in the nine (9) years that she had worked for Southwestern. And but for disabilities which were exacerbated by Southwestern's breach of its contract and its refusal to reimburse her for the tuition for her master's degree, she would not have had any attendance issues. Upon information and belief, neither Ms. Stegner nor Ms. Butterfield are disabled or considered to be disabled as

those terms are used in the ADA like Ms. Donovan is.

Based upon the foregoing, Ms. Donovan alleges that Southwestern violated her rights protected by Title VII and by the ADA by discriminating against her because of her gender and because of her disability and by retaliating against her for needing accommodations and/or FMLA[2] leave. At no time did Southwestern ever offer Ms. Donovan leave under the Family Medical Leave Act. Nor did it ever engage in the interactive process with her concerning her obvious need for accommodation. Such discrimination is included herein without limitation. But her gender and but for her disability, Southwestern would not have taken the adverse employment action against Ms. Donovan by terminating her employment on May 23, 2025.

Southwestern's actions and omissions have caused Ms. Donovan to experience anxiety, emotional distress, pain, and suffering. Ms. Donovan has lost income, and her career and promotional opportunities have diminished due to Southwestern's unlawful and discriminatory conduct. Ms. Donovan has incurred legal costs, expenses, and attorney's fees as a result of Southwestern's unlawful conduct. Southwestern's acts and omissions were intentional, willful, wanton and made in reckless disregard for the consequences and harm to Ms. Donovan. As a result, Ms. Donovan seeks recovery of lost wages, compensatory damages, punitive damages, liquidated damages, legal fees, and costs to discourage Southwestern from engaging in discriminatory or retaliatory treatment of Ms. Donovan and similarly situated persons in the future.

The above summary is not exhaustive, complete, or inclusive. The acts and omissions described above span a significant time period. Ms. Donovan has not had an opportunity to

[2] While Ms. Donovan understands that her claim under the FMLA is not with the EEOC's purview, she is placing Southwestern on notice that, if she is forced to file a lawsuit in a court of competent jurisdiction that she will assert any and all legal claims that she may have against Southwestern,

review all relevant documents or interview witnesses to refresh her recollection prior to filing this charge of discrimination. Ms. Donovan, therefore, submits this charge alleging violations of Title VII and the ADA in the broadest possible sense and reserves the right to add, allege and assert additional facts supporting such broad charges.